**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF OHIO**
**EASTERN DIVISION**

|  |  |  |
|---|---|---|
| **ELECTRONIC MERCHANT SYSTEMS LLC d/b/a ELECTRONIC MERCHANT SYSTEMS,** | : : : : | Case No.: 1:26-CV-00324 |
|  | : | Judge: Bridget Meehan Brennan |
| Plaintiff, | : : : | |
| v. | : : | |
| **EXCLUSIVE WIRELESS LLC d/b/a USAVPN.BIZ, et al.,** | : : : | |
| Defendants. | : : | |

---

### DEFENDANTS' MOTION TO DISMISS

Defendants Exclusive Wireless LLC d/b/a USAVPN.BIZ ("Exclusive Wireless") and Christopher Gouldthorpe ("Mr. Gouldthorpe") (collectively, "Defendants") hereby move the Court for an order dismissing the Complaint of Plaintiff Electronic Merchant Systems LLC d/b/a Electronic Merchant Systems ("EMS") under Federal Rule of Civil Procedure 12(b)(6).[1]

As explained in the attached Memorandum, EMS's complaint contains no plausible allegation that EMS performed its own obligations under the Merchant Agreement at issue; that either Defendant breached the Merchant Agreement or personal guaranty; or that EMS suffered damages. EMS therefore fails to allege the second, third and fourth elements of breach of contract.

Accordingly, the Court should dismiss EMS's complaint under Rule 12(b)(6) for failure to state a claim upon which relief may be granted.

---

[1] Defendants reserve the right to assert a counterclaim, cross claim, and/or a third-party claim against EMS and/or the Bank (as defined in the Merchant Agreement), and further, reserve the right to seek arbitration per the arbitration clause set forth in Sections 26 and 27 of the Merchant Agreement. (Doc # 1-1, PageID: 16-17.)

Respectfully submitted,

**_/s/ Alexander J. Durst_**

Alexander J. Durst       0089819
Paul R. Kerridge       0092701
DURST KERRIDGE LLC
600 Vine St., Suite 1920
Cincinnati, OH 45202
Phone: (513) 621-4999
Fax: (513) 621-0200
Email:  alex@durst.law
      paul@durst.law

*Trial Attorneys for Defendants*

2

## MEMORANDUM IN SUPPORT

### I.    Introduction

EMS, a payment processing company, is suing Exclusive Wireless and Mr. Gouldthorpe, the sole member of Exclusive Wireless. Though not entirely clear from the face of the Complaint, for reasons explained below, EMS appears to raise a claim for breach of contract and seeks to recover fees that were imposed by MasterCard for alleged violation of unspecified "card brand" rules, i.e., rules promulgated by Mastercard.

EMS's claim is not viable as a matter of law because it fails to allege the required elements of breach of contract. Specifically, EMS fails to allege (1) its own performance under any contract, (2) any breach by Defendants, or (3) that EMS has been damaged. Each deficiency independently warrants dismissal under Fed. R. Civ. P. 12(b)(6) for failure to state a claim upon which relief can be granted.

### II.    Facts & Procedural Posture

This action arises from credit card processing services provided by EMS to Exclusive Wireless. (Doc # 1-1, PageID: 7.) On or around October 3, 2024, the parties entered into a Merchant Agreement, under which EMS was to provide credit card processing services to Exclusive Wireless, who would, in turn, pay EMS compensation. (*Id.* at 7-8.)

The Merchant Agreement is signed by Exclusive Wireless and includes a personal guaranty signed by Mr. Gouldthorpe. The guaranty provides:

> [T]he undersigned (jointly and severally if more than one) hereby absolutely and unconditionally guarantee(s) the full and prompt payment by MERCHANT of any and all amounts it owes to BANK and EMS and the performance of all MERCHANT'S obligations under this Agreement as may be subsequently amended from time to time, whether before or after termination or expiration of the Agreement.

(*Id*. at 10.)

3

Several other provisions of the Merchant Agreement are relevant. First, formal notice is required prior to bringing any claims related to "Fees":

> **26. Disputes, Governing Law, Jurisdiction, and Venue.** …Any claims concerning errors in the Fees charged hereunder must be made in writing within six months of the occurrence of the error on which the claim is based, and must specify the grounds for the claim. ***No claim relating to Fees charged hereunder may be brought until thirty days after written notice is provided***…

(*Id.* at 16) (emphasis added.) Second, the Merchant Agreement expressly specifies how EMS must provide such notice to Defendants:

> **21. Notices.** Any notice, request, instruction or other document directed to Merchant required or permitted under this Agreement shall be deemed to have been given, (a) upon inclusion in monthly Merchant Statement available on the EMS electronic portal www.emsdata.net (b) upon inclusion in a notification message on the EMS electronic portal www.emsdata.net (c) upon receipt if by (i) personal delivery or (ii) overnight courier service by way of a national courier (d) upon transmission if by (i) e-mail to the address provided by Merchant on this Agreement or the last address provided to EMS by Merchant, or (ii) fax to the fax number provided by Merchant on this Agreement or the last fax number provided to EMS by Merchant, or (e) on the third day after the sane shall be sent by first class mail postage prepaid, to the address provided by Merchant on this Agreement or at such other address as Merchant may give to the Bank or EMS from time to time by written notice….

(*Id.*) Finally, the Merchant Agreement provides an "Indemnification Clause," which states in relevant part:

> **19. Indemnification; Bank and EMS Liability.** Merchant agrees to indemnity and hold Bank and EMS harmless from and against any Card Brand fines assessments or fees and all losses, liabilities, damages and expenses (including attorneys' fees and collection costs) arising out of or related to (i) the services provided hereunder … (iii) any action by Bank or EMS to collect sums due from Merchant under the Agreement…

(*Id.*)

On January 7, 2026, EMS sued Defendants in the Cuyahoga County Court of Common Pleas (Case No. CV 26 130663), raising a single count. (*Id.* at 7-18.) EMS seeks to recover $233,600.53 of fees allegedly assessed by MasterCard. (*Id.* at 9.)

On February 9, 2026, Defendants removed the case to this Court. (*See* Doc # 1, PageID: 1.)

## III.    Law & Argument

### A.    Standard of Review

The federal rules, including the federal pleading standard, apply to civil actions that are removed from state court. *Golden Eagle Resources II LLC v. Rice Drilling D, LLC*, 2023 U.S. Dist. LEXIS 23575, at *24 (S.D.Ohio 2023) (citing Fed. R. Civ. P. 81(c)(1)).

To survive a motion to dismiss under Rule 12(b)(6), a complaint must provide the grounds for entitlement to relief, which requires more than labels, conclusions, and a formulaic recitation of the elements of a cause of action. *See Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007). "[T]he tenet that a court must accept a complaint's allegations as true is inapplicable to threadbare recitations of a cause of action's elements, supported by mere conclusory statements." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

Dismissal under Civil Rule 12(b)(6) is appropriate if a complaint "does not make out a cognizable legal theory or does not allege sufficient facts to support a cognizable legal theory." *Duff v. Centene Corp.*, 565 F. Supp. 3d 1004, 1019 (S.D. Ohio 2021) Dismissal is also proper under 12(b)(6) if the complaint fails to set forth an allegation of a required element of a claim. *Kitral v. NVR, Inc.,* 2021 U.S. Dist. LEXIS 91215, at *3 (N.D.Ohio.)

Under this standard, EMS's breach of contract claim against Defendants fails.

### B.    EMS's Breach of Contract Claim Fails as a Matter of Law.

The Merchant Agreement contains a choice of law clause providing that it is "governed by and construed in accordance with the laws of the state of Ohio." (Doc # 1-1, PageID: 16.)

5

To prove a breach of contract under Ohio law, the following elements must be established: 1) the existence of a valid contract; 2) performance by the plaintiff; 3) breach by the defendant; and 4) damage or loss to the plaintiff. *Lucarell v. Nationwide Mut. Ins. Co.*, 152 Ohio St.3d 453 (2018), citing *Natl. City Bank of Cleveland v. Erskine & Sons*, 158 Ohio St. 450 (1953), paragraph one of the syllabus.

### 1. EMS Fails to Allege Its Own Performance.

As described above, one of the elements of a breach of contract claim in Ohio is performance by the plaintiff. However, nowhere in EMS's Complaint does such an allegation exist. In its Complaint, EMS identifies the parties, cites the provisions of the Merchant Agreement it finds relevant, and then provides various conclusory allegations regarding the monies it believes it is owed by Defendants. Nowhere in the Complaint does EMS allege that it performed its own obligations under the Merchant Agreement. EMS therefore fails to allege facts that, if proven, would satisfy the first element. *See Agency, Inc. v. Morreale Real Estate Services, Inc.*, 314 F. Supp. 2d 763, 769 (N.D. Ohio 2004) (citing *Thomas v. Publishers Clearing House, Inc.*, 29 Fed. App'x 319, 322 (6th Cir. 2002)).

### 2. EMS Fails to Allege Breach of the Merchant Agreement by Defendants.

Even if EMS had alleged its own performance, EMS cannot recover without plausibly alleging that Defendants breached the Merchant Agreement. *See Kitral,* 2021 U.S. Dist. LEXIS 91215, at *3 (N.D.Ohio.)

"The construction of a written contract is a question [of] law, not of fact, … and as such is an appropriate question for judicial determination on a 12(b)(6) motion to dismiss*." Tuffy Assoc. Corp. v. Felton Tires & Auto, Inc.*, 2009 U.S. Dis. LEXIS 59249, at *7-8 (N.D. Ohio) (citing *Stone v. Natl. City Bank*, 106 Ohio App.3d 212, 217 (8th Dist.1995)). A court's "primary objective"

6

when analyzing a written agreement is "to ascertain and give effect to the intent of the parties by examining the language that they chose to employ." *Savoy Hosp., L.L.C. v. 5839 Monore St. Assocs., L.L.C.*, 2015-Ohio-4879, ¶ 29 (Ct. App.) (citing *Foster Wheeler Enviresponse, Inc. v. Franklin Cty. Convention Facilities Auth.*, 78 Ohio St.3d 353, 361 (1997)).

Under Ohio law, the language of a contract must be enforced as written if it is plain and unambiguous. *Westfield Ins. Co. v. Galatis*, 2003-Ohio-5849, ¶ 11 (2003). "The absence of definitions does not necessarily make terms ambiguous." *Nationwide Mut. Fire Ins. Co. v. Guman Bros. Farm*, 73 Ohio St. 3d 107 (1995). A court must "look to the plain and ordinary meaning of the language used" in the contract unless another meaning is clearly apparent from the contents of the contract. *Westfield Ins. Co.*, 2003-Ohio-5849 at ¶ 11.

In the "Facts" section of the Complaint, EMS merely identifies the parties and cites (sometimes incorrectly) various provisions of the Merchant Agreement. EMS also states that "[i]n 2024 - 2025, Defendants violated MasterCard rules resulting in card brand fines," and that EMS "received notice that in excess of $233,600.53 was being assessed by MasterCard for card brand violations." (Doc # 1-1, PageID: 9.) EMS adds that "[d]espite repeated demands, Defendants have failed to liquidate the balance due and owing [EMS]." (*Id.*) EMS supplies no detail about the alleged violations. (*Id.*)

Defendants assume that EMS is alleging Defendants breached the Merchant Agreement by not indemnifying EMS for "$233,600.53" in card brand fees imposed by MasterCard. EMS fails to allege the third element (breach by the Defendants) because EMS does not allege it completed the conditions precedent to bringing suit—*i.e.*, its compliance with the mandatory notice requirements.

### a. *Mandatory Notice Requirement for Fee-Related Claims*

As noted above, the Merchant Agreement establishes two conditions that must be met before any claim concerning fees may be brought: (1) if the claim relates to an "error," written notice must be provided within six months of the occurrence of that error; and (2) regardless of whether the fee related charge relates to an "error," notice must be provided and 30 days must pass after such notice before suit is filed—evidently providing a cure period. (Doc. #1-1, PageID: 16.) Specifically, the Merchant Agreement states:

> **26. Disputes, Governing Law, Jurisdiction, and Venue. …** Any claims concerning errors in the Fees charged hereunder must be made in writing within six months of the occurrence of the error on which the claim is based, and must specify the grounds for the claim. *No claim relating to Fees charged hereunder may be brought until thirty days after written notice is provided…*

(*Id.*) (emphasis added.)

### b. "*Assessments" are "Fees" Under the Merchant Agreement.*

Because the term "Fees" is not explicitly defined in the Merchant Agreement, the Court must apply the plain and ordinary meaning of the term. *See Westfield Ins. Co.*, 2003-Ohio-5849 at ¶ 11. As recognized in this circuit, Black's Law Dictionary defines a "fee" as "a charge for labor or services, esp. professional services." *In re Martin Designs, Inc.*, 2013 Bankr. LEXIS 1150, at *1 (Bankr. N.D. Ohio) (citing Black's Law Dictionary (9th ed. 2009)).

It bears adding, under Ohio law, contracts must be read as a whole. *Bank of New York Mellon v. Rhiel*, 155 Ohio St.3d 558, 560 (2018). Consistent with this broad definition, the term "Fees" is used several times to mean different things: *see, e.g.*, "SCHEDULE OF FEES" ("the Schedule") or "Early Termination Fee." (Doc # 1-1, PageID: 11.) Under a plain and ordinary reading of the Merchant Agreement as a whole, therefore, "Fees" is an umbrella term to describe charges either party may be obligated to pay under the Merchant Agreement.

8

The Schedule provides that "assessments…will be charged to the Merchant on every Transaction." (*Id.*) Therefore, assessments are explicitly considered as Fees in the Schedule. Moreover, the Schedule points to Section 9 for more information about how Fees are calculated. (*Id.*) Section 9, in turn, includes various definitions of terms used in the Schedule. Specifically, the term "Assessments" is defined as including "dues, assessments, acquirer fees, network fees, or other **Card Brand fees and expenses assessed to Merchant, EMS or Bank**…" and lists "[e]xamples of these types of charges include NABU, NAPF, APF, FANF, switch charges, international Transaction surcharge fees or cross border fees, network fees, integrity fee, Card Brand Authentication fees, and **Card Brand Assessments.**" (*Id.* at 13-14.) Therefore, under the Merchant Agreement, "Card Brand fees and expenses assessed to Merchant" are considered "Fees."

Critically, EMS alleges that it "received notice" from Mastercard that "$233,600.53 was being assessed by MasterCard for card brand violations." (*Id.* at 9.) Putting aside the lack of detail regarding the alleged violations, nowhere in its Complaint does EMS allege that it *provided* the required written notice to *Exclusive Wireless* or that it waited the mandatory thirty-day cure period before filing suit.

This is fatal to EMS's claim. Receiving notice from a third party (presumably MasterCard) does not satisfy EMS's obligations to *provide* notice to Exclusive Wireless. Because EMS has not alleged that it complied with this notice requirement—and therefore allowed Defendants an opportunity to cure—the Merchant Agreement precludes this suit.

It bears adding, EMS's Complaint alleges that the fees were accrued in 2024 and 2025. (*Id.* at 8-9.) EMS fails to make any allegation that it complied with, or is somehow relieved from

complying with, the requirement to notice any error within the required six-month timeframe. That is another fatal deficiency.

Absent plausible allegations that EMS complied with the Merchant Agreement's mandatory notice provisions, EMS fails to allege any breach by Exclusive Wireless. And without an underlying breach by Exclusive Wireless, there can be no breach by Gouldthorpe as guarantor.

### 3. EMS Fails to Allege it has been Damaged.

EMS cannot recover from Defendants without first establishing that it has experienced damage or loss. *See Kitral,* 2021 U.S. Dist. LEXIS 91215, at \*3 (N.D.Ohio.)

Indemnity arises from contract, and "is the right of a person, who has been compelled to pay what another should have paid, to require complete reimbursement." *Worth v. Aetna Cas. & Sur. Co.*, 32 Ohio St. 3d 238, 240 (1987) (citing *Travelers Indemnity Co. v. Trowbridge*, 41 Ohio St. 2d 11 (1975)). Generally, to indemnify is "to make whole." *Worth*, 32 Ohio St. 3d 238 at 240. Specifically, "[i]ndemnification occurs when one who is primarily liable is required to reimburse another who has discharged a liability for which that other is only secondarily liable." *Krasny-Kaplan Corp. v. Flo-Tork, Inc.*, 66 Ohio St.3d 75, 78 (Ohio 1993). A plaintiff asserting the claim "seeks complete reimbursement from the party primarily liable for damages he or she has incurred." *Wagner-Meinert, Inc. v. EDA Controls Corp.*, 444 F. Supp.2d 800, 803-04 (N.D. Ohio 2006).

In support of its claim for indemnification, EMS merely cites indemnification language that is not included in the Merchant Agreement. (Doc # 1-1, PageID: 8.) Contrary to what is stated in the Complaint, Section 17 of the Merchant Agreement outlines the Term of the Merchant Agreement. (*Id.* at 16.) Rather, it is Section 19 of the Merchant Agreement that supplies the relevant Indemnification Clause. (*Id.*) (emphasis added.)

10

EMS also offers several conclusory allegations, claiming:

- After an accounting of credit card transactions, deposits, credits, violations and chargebacks, the net amount due and owing EMS is $233,600.53. See Reserve Transaction Sheet marked Exhibit B. (*Id.* at 9.)

- Despite repeated demands, Defendants have failed to liquidate the balance due and owing EMS. (*Id.*)

However, the Complaint is silent as to whether EMS actually paid any fees allegedly assessed by MasterCard, or whether EMS suffered any other loss or otherwise incurred any damages. After all, indemnification is akin to reimbursement—Defendants have absolutely no obligation to reimburse EMS for fees that EMS has not paid. Accordingly, EMS fails to allege damages.

EMS, thus, fails to plead the second, third or fourth elements of breach of contract, and as a result, its sole claim against Defendants fails.

## IV. Conclusion

For the reasons explained above, the Court should dismiss EMS's Complaint for failure to state a claim upon which relief can be granted.

Respectfully submitted,

*/s/ Alexander J. Durst*

| Alexander J. Durst | 0089819 |
| Paul R. Kerridge | 0092701 |

DURST KERRIDGE LLC
600 Vine St., Suite 1920
Cincinnati, OH 45202
Phone: (513) 621-4999
Fax: (513) 621-0200
Email: alex@durst.law
   paul@durst.law

*Trial Attorneys for Defendants*

11

## <u>CERTIFICATE OF COMPLIANCE WITH LOCAL RULE 7.1(F)</u>

This case has not yet been assigned to any track. The page limit applicable to this memorandum has not been modified by court order. This memorandum complies with the page limit specified in LR 7.1(f).

*/s/ Alexander J. Durst*
Alexander J. Durst                    0089819

12