**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF OHIO**
**EASTERN DIVISION**

|  |  |  |
|---|---|---|
| **ELECTRONIC MERCHANT SYSTEMS LLC d/b/a ELECTRONIC MERCHANT SYSTEMS,** | : : : : : | Case No.: 1:26-CV-00324 |
|  | : | Judge: Bridget Meehan Brennan |
| Plaintiff, | : : |  |
| v. | : : |  |
| **EXCLUSIVE WIRELESS LLC d/b/a USAVPN.BIZ, et al.,** | : : : |  |
| Defendants. | : : |  |

---

### DEFENDANTS' MOTION TO DISMISS AMENDED COMPLAINT

Defendants Exclusive Wireless LLC d/b/a USAVPN.BIZ ("Exclusive Wireless") and Christopher Gouldthorpe ("Mr. Gouldthorpe") (collectively, "Defendants") hereby move the Court for an order dismissing the Amended Complaint filed by Plaintiff Electronic Merchant Systems LLC d/b/a Electronic Merchant Systems ("EMS") under Federal Rule of Civil Procedure 12(b)(6).[1]

As explained in the attached Memorandum, EMS fails to plead the second, third, and fourth elements of a breach of contract claim—its only cause of action—because the Amended Complaint contains no plausible allegation that EMS provided the required notice and cure period, that Exclusive Wireless breached the Merchant Agreement, or that EMS suffered any damages. And without an underlying breach by Exclusive Wireless, Mr. Gouldthorpe cannot be liable for breach of any guaranty.

---

[1] Defendants reserve the right to assert a counterclaim, cross claim, and/or a third-party claim against EMS and/or the Bank (as defined in the Merchant Agreement), and further, reserve the right to seek arbitration per the arbitration clause set forth in Sections 26 and 27 of the Merchant Agreement. (Doc # 9-1, PageID: 94-95.)

Accordingly, the Court should dismiss EMS's Amended Complaint under Rule 12(b)(6) for failure to state a claim upon which relief may be granted.

Respectfully submitted,

*/s/Alexander J. Durst*

| | |
|---|---|
| Alexander J. Durst | 0089819 |
| Paul R. Kerridge | 0092701 |

DURST KERRIDGE LLC
600 Vine St., Suite 1920
Cincinnati, OH 45202
Phone: (513) 621-4999
Fax: (513) 621-0200
Email: alex@durst.law
        paul@durst.law

*Trial Attorneys for Defendants*

2

<u>**MEMORANDUM IN SUPPORT**</u>

## I.      Introduction

EMS, a payment processing company, is suing Exclusive Wireless and Mr. Gouldthorpe, the sole member of Exclusive Wireless. EMS raises a claim for breach of contract and seeks to recover fees that were allegedly "assessed" by MasterCard for alleged violations of unspecified "card brand" rules, *i.e.*, rules promulgated by Mastercard.

EMS's claim is not viable as a matter of law because it fails to allege the required elements of breach of contract. Specifically, EMS fails to plausibly allege (1) that it performed under the contract, (2) any breach by Defendants, or (3) that EMS has been damaged. These deficiencies warrant dismissal under Fed. R. Civ. P. 12(b)(6) for failure to state a claim upon which relief can be granted.

## II.     Facts & Procedural Posture

This action arises from credit card processing services provided by EMS to Exclusive Wireless. (Doc # 9, PageID: 84.) On or around October 3, 2024, the parties entered into a Merchant Agreement, under which EMS was to provide credit card processing services to Exclusive Wireless, who would, in turn, pay EMS compensation. (*Id.*)

The Merchant Agreement is signed by Exclusive Wireless and includes a personal guaranty signed by Mr. Gouldthorpe. The guaranty provides:

> [T]he undersigned (jointly and severally if more than one) hereby absolutely and unconditionally guarantee(s) the full and prompt payment by MERCHANT of any and all amounts it owes to BANK and EMS and the performance of all MERCHANT'S obligations under this Agreement as may be subsequently amended from time to time, whether before or after termination or expiration of the Agreement.

(Doc # 9-1, PageID: 89.)

Several other provisions of the Merchant Agreement are relevant. First, formal notice is required prior to bringing any claims related to "Fees":

> **26. Disputes, Governing Law, Jurisdiction, and Venue.** … Any claims concerning errors in the Fees charged hereunder must be made in writing within six months of the occurrence of the error on which the claim is based, and must specify the grounds for the claim. **No claim relating to Fees charged hereunder may be brought until thirty days after written notice is provided**…

(*Id.* at 94) (emphasis added.) Second, the Merchant Agreement expressly specifies how EMS must provide such notice to Defendants:

> **21. Notices.** Any notice, request, instruction or other document directed to Merchant required or permitted under this Agreement shall be deemed to have been given, (a) upon inclusion in monthly Merchant Statement available on the EMS electronic portal www.emsdata.net (b) upon inclusion in a notification message on the EMS electronic portal www.emsdata.net (c) upon receipt if by (i) personal delivery or (ii) overnight courier service by way of a national courier (d) upon transmission if by (i) e-mail to the address provided by Merchant on this Agreement or the last address provided to EMS by Merchant, or (ii) fax to the fax number provided by Merchant on this Agreement or the last fax number provided to EMS by Merchant, or (e) on the third day after the sane shall be sent by first class mail postage prepaid, to the address provided by Merchant on this Agreement or at such other address as Merchant may give to the Bank or EMS from time to time by written notice….

(*Id.*) Finally, the Merchant Agreement provides an "Indemnification Clause," which states in relevant part:

> **19. Indemnification; Bank and EMS Liability.** Merchant agrees to indemnity and hold Bank and EMS harmless from and against any Card Brand fines assessments or fees and all losses, liabilities, damages and expenses (including attorneys' fees and collection costs) arising out of or related to (i) the services provided hereunder … (iii) any action by Bank or EMS to collect sums due from Merchant under the Agreement…

(*Id.*)

On January 7, 2026, EMS sued Defendants in the Cuyahoga County Court of Common Pleas, asserting a single count for breach of contract. (*See* Doc # 9, generally.) EMS seeks to recover $233,600.53 of fees allegedly "assessed" by MasterCard. (*Id.* at PageID: 86.) On February

4

9, 2026, Defendants removed the case to this Court. (*See* Doc # 1, PageID: 1.) Defendants then moved to dismiss the case, and EMS filed a Motion for Leave to Amend the Complaint. (Doc # 5; Doc # 9.) On April 9, 2026, the Court granted EMS Motion for Leave and considered the Amended Complaint that was attached to the Motion for Leave filed *Instanter*. (*See* Order [non-document] 4/9/26.)

## III.    Law & Argument

### A.  <u>Standard of Review</u>

The federal rules, including the federal pleading standard, apply to civil actions that are removed from state court. *Golden Eagle Resources II LLC v. Rice Drilling D, LLC*, 2023 U.S. Dist. LEXIS 23575, at *24 (S.D.Ohio 2023) (citing Fed. R. Civ. P. 81(c)(1)).

To survive a motion to dismiss under Rule 12(b)(6), a complaint must provide the grounds for entitlement to relief, which requires more than labels, conclusions, and a formulaic recitation of the elements of a cause of action. *See Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007). "[T]he tenet that a court must accept a complaint's allegations as true is inapplicable to threadbare recitations of a cause of action's elements, supported by mere conclusory statements." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

Dismissal under Civil Rule 12(b)(6) is appropriate if a complaint "does not make out a cognizable legal theory or does not allege sufficient facts to support a cognizable legal theory." *Duff v. Centene Corp.*, 565 F. Supp. 3d 1004, 1019 (S.D. Ohio 2021) Dismissal is also proper under 12(b)(6) if the complaint fails to set forth an allegation of a required element of a claim. *Kitral v. NVR, Inc.,* 2021 U.S. Dist. LEXIS 91215, at *3 (N.D.Ohio.)

Under this standard, EMS's breach of contract claim against Defendants fails.

**B.  <u>EMS's Breach of Contract Claim Fails as a Matter of Law.</u>**

The Merchant Agreement contains a choice of law clause providing that it is "governed by and construed in accordance with the laws of the state of Ohio." (Doc # 9-1, PageID: 94.)

To prove a breach of contract under Ohio law, the following elements must be established: 1) the existence of a valid contract; 2) performance by the plaintiff; 3) breach by the defendant; and 4) damage or loss to the plaintiff. *Lucarell v. Nationwide Mut. Ins. Co.*, 152 Ohio St.3d 453 (2018), citing *Natl. City Bank of Cleveland v. Erskine & Sons*, 158 Ohio St. 450 (1953), paragraph one of the syllabus.

**1.  EMS Fails to Allege Breach of the Merchant Agreement by Defendants.**

EMS cannot recover without plausibly alleging that it performed and that Defendants breached the Merchant Agreement. *See Kitral,* 2021 U.S. Dist. LEXIS 91215, at *3 (N.D.Ohio.)

"The construction of a written contract is a question [of] law, not of fact, … and as such is an appropriate question for judicial determination on a 12(b)(6) motion to dismiss.*" Tuffy Assoc. Corp. v. Felton Tires & Auto, Inc.*, 2009 U.S. Dis. LEXIS 59249, at *7-8 (N.D. Ohio) (citing *Stone v. Natl. City Bank*, 106 Ohio App.3d 212, 217 (8th Dist.1995)). A court's "primary objective" when analyzing a written agreement is "to ascertain and give effect to the intent of the parties by examining the language that they chose to employ." *Savoy Hosp., L.L.C. v. 5839 Monore St. Assocs., L.L.C.*, 2015-Ohio-4879, ¶ 29 (Ct. App.) (citing *Foster Wheeler Enviresponse, Inc. v. Franklin Cty. Convention Facilities Auth.*, 78 Ohio St.3d 353, 361 (1997)).

Under Ohio law, the language of a contract must be enforced as written if it is plain and unambiguous. *Westfield Ins. Co. v. Galatis*, 2003-Ohio-5849, ¶ 11 (2003). "The absence of definitions does not necessarily make terms ambiguous." *Nationwide Mut. Fire Ins. Co. v. Guman Bros. Farm*, 73 Ohio St. 3d 107 (1995). A court must "look to the plain and ordinary meaning of

the language used" in the contract unless another meaning is clearly apparent from the contents of the contract. *Westfield Ins. Co.*, 2003-Ohio-5849 at ¶ 11.

In the "Facts" section of the Amended Complaint, EMS merely identifies the parties and cites various provisions of the Merchant Agreement. EMS also states that "[i]n 2024 - 2025, Defendants violated MasterCard rules resulting in card brand fines," and that EMS "received notice that in excess of $233,600.53 was being assessed by MasterCard for card brand violations." (Doc # 9-1, PageID: 86.) EMS adds that "[d]espite repeated demands, Defendants have failed to liquidate the balance due and owing [EMS]." (*Id.*) EMS supplies no detail about the alleged violations. (*Id.*) Defendants assume that EMS is alleging Defendants breached the Merchant Agreement by not indemnifying EMS for "$233,600.53" in card brand fees purportedly imposed by MasterCard.

Crucially, EMS fails to allege the second element (performance by EMS) and the third element (breach by the Defendants) because EMS does not allege it complied with the mandatory notice and cure requirements, it failed to perform; and, under the Merchant Agreement, Defendants cannot be held liable for a purported breach when they have been denied notice and a cure period.

### a. Mandatory Notice Requirement for Fee-Related Claims

As noted above, the Merchant Agreement establishes two conditions that must be met before any claim concerning fees may be brought: (1) if the claim relates to an "error," written notice must be provided within six months of the occurrence of that error; and (2) regardless of whether the fee-related charge relates to an "error," notice must be provided and thirty days must pass after such notice before suit is filed—providing a cure period. (Doc #9-1, PageID: 94.) Specifically, the Merchant Agreement states:

> **26. Disputes, Governing Law, Jurisdiction, and Venue. …** Any claims concerning errors in the Fees charged hereunder must be made in writing within six

months of the occurrence of the error on which the claim is based, and must specify the grounds for the claim. No claim relating to Fees charged hereunder may be brought until thirty days after written notice is provided…

(*Id.*) (emphasis added.)

### b.  "*Assessments" are "Fees" Under the Merchant Agreement.*

Because the term "Fees" is not explicitly defined in the Merchant Agreement, the Court must apply the plain and ordinary meaning of the term. *See Westfield Ins. Co.*, 2003-Ohio-5849 at ¶ 11. As recognized in this circuit, Black's Law Dictionary defines a "fee" as "a charge for labor or services, esp. professional services." *In re Martin Designs, Inc.*, 2013 Bankr. LEXIS 1150, at *1 (Bankr. N.D. Ohio) (citing Black's Law Dictionary (9th ed. 2009)).

It bears adding, under Ohio law, contracts must be read as a whole. *Bank of New York Mellon v. Rhiel*, 155 Ohio St.3d 558, 560 (2018). Consistent with this broad definition, the term "Fees" is used several times to mean different things: *see, e.g.*, "SCHEDULE OF FEES" ("the Schedule") or "Early Termination Fee." (Doc # 9-1, PageID: 89.) Under a plain and ordinary reading of the Merchant Agreement as a whole, therefore, "Fees" is an umbrella term to describe charges either party may be obligated to pay under the Merchant Agreement.

The Schedule provides that "assessments…will be charged to the Merchant on every Transaction." (*Id.*) Therefore, assessments are explicitly considered as Fees in the Schedule. Moreover, the Schedule points to Section 9 for more information about how Fees are calculated. (*Id.*) Section 9, in turn, includes various definitions of terms used in the Schedule. Specifically, the term "Assessments" is defined as including "dues, assessments, acquirer fees, network fees, or other **Card Brand fees and expenses assessed to Merchant, EMS or Bank**…" and lists "[e]xamples of these types of charges include NABU, NAPF, APF, FANF, switch charges, international Transaction surcharge fees or cross border fees, network fees, integrity fee, Card

8

Brand Authentication fees, and **Card Brand Assessments.**" (*Id.* at PageID: 92.) Accordingly, under the plain and unambiguous language of the Merchant Agreement, "Card Brand fees and expenses assessed to Merchant" are considered "Fees."

Accordingly, the condition precedent to EMS bringing suit is notice and waiting the thirty-day cure period.

### c. EMS Fails to Allege It Met the Condition Precedent to Bringing Suit of Providing Notice and Waiting the Required Cure Period.

Under Fed. R. Civ. P. 9(c), a plaintiff is required to "allege generally that all conditions precedent have occurred or been performed…" Although the case did not consider Rule 9(c), *Iqbal* addressed the phrase "allege generally" as used elsewhere in Rule 9, finding that it did not create a pleading standard different from Rule 8(a)'s plausibility standard:

> "[G]enerally" is a relative term. In the context of Rule 9, it is to be compared to the particularity requirement applicable to fraud or mistake. Rule 9 merely excuses a party from pleading discriminatory intent under an elevated pleading standard. It does not give him license to evade the less rigid—though still operative—strictures of Rule 8. . . . And Rule 8 does not empower respondent to plead the bare elements of his cause of action, affix the label "general allegation," and expect his complaint to survive a motion to dismiss.

*Iqbal*, 556 U.S. at 686-87 (discussing Rule 9(b)).

Under the prevailing view of how to apply *Iqbal* to Rule 9(c)'s requirement that conditions precedent be alleged "generally," courts throughout the nation have held that a conclusory allegation of performance of the conditions precedent is insufficient. *See, e.g.*, *Dervan v. Gordian Grp. LLC*, No. 16-CV-1694 (AJN), 2017 U.S. Dist. LEXIS 28551, 2017 WL 819494, at *5 (S.D.N.Y. Feb. 28, 2017) (concluding that *Iqbal*'s plausibility pleading requirement is applicable to Rule 9(c)); *Chesapeake Square Hotel, LLC v. Logan's Roadhouse, Inc.*, 995 F. Supp. 2d 512, 517 (E.D. Va. 2014) (same). The conclusory allegation that a plaintiff performed under the contract is also insufficient. *DNF Assocs., LLC v. HSBC Bank USA, N.A.*, 2024 U.S. Dist. LEXIS

76819, at 9-15 (S.D.N.Y. 2024) (The plaintiff's "threadbare and conclusory allegation that it 'fulfilled its obligations in [the] Agreement,' … does not save its claim," as it "does not provide 'sufficient factual matter' that would allow the [C]ourt to 'draw the reasonable inference' that all conditions precedent have been satisfied and 'that [the defendant] is liable for the misconduct alleged.'"); *see also Costello v. Tropical Paradise*, 2026 U.S. Dist. LEXIS 46710, at *6-7 (W.D.Tex., 2026); *Sovereign Bank v. Sturgis*, 863 F.Supp.2d 75, 81 (D.Mass. 2012); *United States v. Travelers Cas. & Sur. Co. of Am.*, 2024 U.S. Dist. LEXIS 102382, at *29-30 (D.Md. 2024). Instead, the plaintiff must plausibly allege *facts* to support the claim that they have satisfied conditions precedent. *Dervan*, 2017 U.S. Dist. LEXIS 28551, 2017 WL 819494, at *5.

Here, EMS merely alleged it "fully performed all its obligations under the Agreement." (Doc #: 9-1, PageID: 85.) To be sure, EMS alleged that it "received notice" from Mastercard that "$233,600.53 was being assessed by MasterCard for card brand violations." (*Id.* at PageID: 86.) But nowhere in its Amended Complaint does EMS allege that it *provided* the required written notice to Exclusive Wireless or that it waited the mandatory thirty-day cure period before filing suit.

In other words, EMS fails to plausibly allege, generally or otherwise, that it complied with the Merchant Agreement's notice requirement—and therefore allowed Defendants an opportunity to cure—a condition precedent to bringing suit.

It bears adding, EMS's Amended Complaint alleges that the fees were accrued in 2024 and 2025. (Doc # 9-1, PageID: 86.) EMS fails to make any allegation that it complied with, or is somehow relieved from complying with, the requirement to notice any error within the required six-month timeframe.

10

Absent plausible allegations that EMS complied with the Merchant Agreement's mandatory notice and cure provision, or the timeline for identifying errors, EMS fails to allege a plausible claim for breach of contract. And without a viable claim for breach by Exclusive Wireless, there can be no breach by Mr. Gouldthorpe as guarantor. The Complaint should be dismissed pursuant to Fed. R. Civ. P. 12(b)(6).

### 2. EMS Fails to Allege it has been Damaged.

EMS cannot recover from Defendants without first establishing that it has experienced damage or loss. *See Kitral,* 2021 U.S. Dist. LEXIS 91215, at *3 (N.D.Ohio.)

Indemnity arises from contract, and "is the right of a person, who has been compelled to pay what another should have paid, to require complete reimbursement." *Worth v. Aetna Cas. & Sur. Co.*, 32 Ohio St. 3d 238, 240 (1987) (citing *Travelers Indemnity Co. v. Trowbridge*, 41 Ohio St. 2d 11 (1975)). Generally, to indemnify is "to make whole." *Worth*, 32 Ohio St. 3d 238 at 240. Specifically, "[i]ndemnification occurs when one who is primarily liable is required to reimburse another who has discharged a liability for which that other is only secondarily liable." *Krasny-Kaplan Corp. v. Flo-Tork, Inc.*, 66 Ohio St.3d 75, 78 (Ohio 1993). A plaintiff asserting the claim "seeks complete reimbursement from the party primarily liable for damages he or she has incurred." *Wagner-Meinert, Inc. v. EDA Controls Corp.*, 444 F. Supp.2d 800, 803-04 (N.D. Ohio 2006).

In support of its claim for indemnification, EMS merely cites indemnification language from Section 19 of the Merchant Agreement. (Doc # 9-1, PageID: 85.)

EMS also offers several conclusory allegations, claiming:

- After an accounting of credit card transactions, deposits, credits, violations and chargebacks, the net amount due and owing EMS is $233,600.53. See Reserve Transaction Sheet marked Exhibit B. (*Id.* at PageID: 86.)

11

- Despite repeated demands, Defendants have failed to liquidate the balance due and owing EMS. (*Id.*)

However, the Amended Complaint is silent as to whether EMS actually paid any fees allegedly assessed by MasterCard, suffered any other loss, or otherwise incurred any damages. After all, indemnification means reimbursement; Defendants have absolutely no obligation to "reimburse" EMS when EMS does not allege it paid anything—there is nothing to reimburse.

Accordingly, in addition to failing to plead the third element of breach of contract, EMS fails to allege damages, the fourth element. Therefore, EMS's sole claim against Defendants fails.

## IV. Conclusion

For the reasons explained above, the Court should dismiss EMS's Amended Complaint for failure to state a claim upon which relief can be granted.

Respectfully submitted,

*/s/Alexander J. Durst*

Alexander J. Durst 0089819
Paul R. Kerridge 0092701
DURST KERRIDGE LLC
600 Vine St., Suite 1920
Cincinnati, OH 45202
Phone: (513) 621-4999
Fax: (513) 621-0200
Email: alex@durst.law
        paul@durst.law

*Trial Attorneys for Defendants*

## CERTIFICATE OF COMPLIANCE WITH LOCAL RULE 7.1(F)

This case has not yet been assigned to any track. The page limit applicable to this memorandum has not been modified by court order. This memorandum complies with the page limit specified in LR 7.1(f).

*/s/ Alexander J. Durst*

Alexander J. Durst 0089819